UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

THE CHEFS' WAREHOUSE, INC.,

                          Plaintiff,

                -v.-

EMPLOYERS INSURANCE COMPANY OF
WAUSAU,

                          Defendant.

─────────────────────────────────

20 Civ. 4825 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff The Chefs' Warehouse, Inc. brings this breach of contract action against Defendant Employers Insurance Company of Wausau to recover losses Plaintiff incurred as a result of the COVID-19 pandemic and related governmental restrictions on non-essential businesses. Plaintiff alleges that Defendant breached its insurance coverage obligations under a first-party property policy (the "All-Risk Policy" or "Policy") by denying coverage for these losses, and seeks compensatory damages and declaratory relief.

Defendant has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), on the grounds that Plaintiff has failed to allege any losses covered by the Policy, or in the alternative, that recovery for such losses is expressly excluded under the terms of the Policy. For the reasons that follow, the Court grants Defendant's motion, though it also grants Plaintiff leave to file an amended complaint.

## BACKGROUND[1]

### A.    Factual Background

### 1.    The Parties

Plaintiff is a Delaware corporation with its principal place of business in Connecticut.  (Compl. ¶ 3).  Plaintiff provides specialty food products to restaurants, cruise lines, hotels, casinos, country clubs, and other culinary establishments in markets across the United States and Canada.  (*Id.* at ¶¶ 8-10).  Defendant is a corporation incorporated and headquartered in Wisconsin that does business in New York.  (*Id.* at ¶ 5).  As relevant here, Plaintiff purchased an insurance policy from Defendant that provides coverage for "all

---

[1]    This Opinion draws its facts from Plaintiff's Complaint ("Compl." (Dkt. #1)), which is the operative pleading in this matter, as well as the exhibits appended thereto.  *See L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (internal quotation marks omitted)).  The exhibits attached to the Complaint include the Premier Property Protector™ policy issued by Defendant (the "All-Risk Policy" or "Policy" (Compl., Ex. A)), and the list of state and local government restrictions suspending or substantially limiting the operations of non-essential businesses ("List of State and Local COVID-19 Orders" (*id.*, Ex. B)).  The Court will also take judicial notice of certain COVID-19-related state and local orders, as they are publicly available documents, the contents of which can be "readily determined from sources whose accuracy cannot readily be questioned."  Fed. R. Evid. 201(b); *see also Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (noting that "[c]ourts routinely take judicial notice of … governmental records [retrieved from official government websites]").  The Court also considers Defendant's Answer and Defenses to the Complaint ("Answer" (Dkt. #15)).  On this motion for judgment on the pleadings, the Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor.  *See Harris* v. *Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

For convenience, the Court refers to Defendant's Memorandum of Law in Support of the Motion for Judgment on the Pleadings as "Def. Br." (Dkt. #34); Plaintiff's Memorandum of Law in Opposition to the Motion for Judgment on the Pleadings as "Pl. Opp." (Dkt. #40); and Defendant's Reply Memorandum of Law in Support of the Motion for Judgment on the Pleadings as "Def. Reply" (Dkt. #45).

risks of direct physical loss or damage" unless "excluded or limited" elsewhere in the Policy.  (*Id.* at ¶ 13; All-Risk Policy § I.C).

### 2.    The All-Risk Policy and Defendant's Denial of Plaintiff's Coverage Claim

Plaintiff's Policy with Defendant provided business interruption (or "Time Element") coverage for a term running from August 1, 2019, to August 1, 2020. (All-Risk Policy § I.B).  The Policy covers Plaintiff's actual losses sustained (*id.* § III.B.1 (defining "Gross Earnings")) and extra expenses incurred (*id.* § III.B.2 (defining "Extra Expense")) from a business interruption caused by "direct physical loss or damage" to property that is covered under the Policy (*id.* § VII.5 (defining "covered loss" as a "loss to covered property caused by *direct physical loss or damage* insured by this Policy" (emphasis added))).  The Policy defines the period of liability as beginning "from the time of physical loss or damage of the type insured" and ending "when with due diligence and dispatch the building and equipment could be" "repaired or replaced" and "made ready for operations."  (*Id.* § III.C.1.a.(1)-(2)).  This case turns on whether Plaintiff has adequately pleaded that COVID-19 and the concomitant governmental restrictions on businesses caused "direct physical loss or damage," as necessary to trigger Defendant's coverage obligations under the Policy.

The Policy's Time Element provisions detail the types of business interruptions covered by the Policy.  (*See* All-Risk Policy § III.E).  Of particular relevance here is the Policy's "Contingent Time Element" provision, which provides coverage for business interruptions stemming from physical loss or damage that occurs at one of Plaintiff's direct or indirect customers.  (*Id.*

§ III.E.4).[2]  The Policy's Time Element coverage also extends to business interruptions caused by an order of "Civil or Military Authority" precipitated by the type of direct physical injury or loss covered by the Policy.  (*Id.* § III.E.2).[3] As such, coverage under the Policy may be activated by physical loss or damage that affects property other than that owned and controlled by Plaintiff. In any event, a valid claim under the Policy requires that covered property sustain "direct physical loss or damage."

The Policy also contains a number of exclusions from coverage, only one of which is potentially applicable here.  In relevant part, the Policy excludes from coverage any business losses resulting from "[c]ontamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy," "unless directly resulting from a covered loss."  (All-Risk Policy § II.C.4.a).  The Policy defines contamination as "[*a*]*ny condition of property* that results from a contaminant," with "contaminant" defined as "[a]ny foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease

---

[2]    Specifically, "Contingent Time Element" coverage is triggered under the Policy when there is "physical loss or damage of the type insured by this Policy at Direct Dependent Time Element Location(s) and Indirect Time Element Location(s)[.]"  (All-Risk Policy § III.E.4.a-.d).  In essence, this provision provides coverage if a policyholder's direct or indirect customer (a Direct Dependent Time Element Location or an Indirect Dependent Time Element Location, respectively) sustains a covered loss.  (*See* Compl. ¶¶ 59-60).

[3]    The Policy provides that "Civil or Military Authority" coverage encompasses losses sustained "if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within the number of statute miles specified in the [limits of liability] table[.]"  (All-Risk Policy § III.E.2.a).

4

causing or illness causing agent, fungus, mold or mildew." (*Id.* §§ VII.3-.4 (emphases added)).

On April 29, 2020, Plaintiff provided notice to Defendant of an insurance claim for Time Element losses, including under the Civil Authority and Contingent Time Element provisions, in connection with the pandemic-induced business interruptions faced by Plaintiff and its direct and indirect customers. (Compl. ¶¶ 75-79).  Defendant denied this claim in full on May 4, 2020.  (*Id.* at ¶ 82).  In denying the claim, Defendant noted that "[t]he Time Element coverages available under your policy requires physical damage by a peril insured against." (*Id.* at ¶ 83).  Defendant further explained that "[a]s there was no physical damage and contamination is an excluded peril, there is no coverage provided for [Plaintiff's] business interruption loss." (*Id.* at ¶ 84).  On the basis of this denial, Plaintiff filed the instant suit.

### 3. The COVID-19 Shutdown Orders

In early 2020, in response to the COVID-19 global pandemic, state and local governments across the United States issued orders suspending or substantially limiting the operations of non-essential businesses.  (Compl. ¶ 25; *see also* List of State and Local COVID-19 Orders).  In mid-March 2020, state and local governments in major markets that Plaintiff services, including New York, Southern and Northern California, Chicago, and Washington, D.C., issued "stay at home" or "shelter in place" orders.  (Compl. ¶ 28).  As an example, on March 16, 2020, New York City Mayor Bill de Blasio issued an order mandating the closure of all restaurants, bars, and cafés due to the risks

posed by COVID-19, *see* N.Y.C. Emergency Exec. Ord. No. 100, § 7 (Mar. 16, 2020), and on March 20, 2020, then-New York Governor Andrew Cuomo issued a stay-at-home order requiring the statewide closure of all "non-essential" businesses, including restaurants, hotels, and caterers, *see* N.Y. Exec. Ord. No. 202.8 (Mar. 20, 2020). (*Id.* at ¶¶ 30-31). Plaintiff avers that some of these orders were "explicitly based on the belief that COVID-19 causes physical loss or damage to property." (*Id.* at ¶ 45). Plaintiff further alleges that as a result of these orders, both it and its "direct and indirect customers" were shuttered. (*Id.*).

**B.     Procedural Background**

On June 23, 2020, Plaintiff initiated this action against Defendant and Liberty Mutual Insurance Company by filing its Complaint. (Dkt. #1). Defendant responded to the Complaint by filing its Answer on August 28, 2020. (Dkt. #15). Following an initial pretrial conference on September 29, 2020 (*see* Minute Entry for Sept. 29, 2020), the Court endorsed the parties' proposed case management plan (Dkt. #20). Also on September 29, 2020, the parties entered a stipulation of voluntary dismissal without prejudice as to Liberty Mutual Insurance Company (Dkt. #22), which stipulation the Court endorsed the same day (Dkt. #23).

On January 4, 2021, Defendant submitted a letter motion seeking a pre-motion conference regarding its anticipated motion for judgment on the pleadings. (Dkt. #30). Plaintiff filed a letter in opposition to Defendant's application on January 7, 2021. (Dkt. #31). The Court entered an order

granting Defendant leave to file its motion, without requiring the parties to participate in a pre-motion conference. (Dkt. #32).

Defendant filed its motion for judgment on the pleadings on February 8, 2021. (Dkt. #34). On March 11, 2021, Defendant filed a notice of supplemental authority in support of its motion for judgment on the pleadings. (Dkt. #39). Plaintiff filed its opposition papers, as well as a request that the Court take judicial notice of certain publicly available insurance documents and regulatory filings on March 15, 2021. (Dkt. #40-42). Plaintiff subsequently filed a notice of supplemental authority on April 8, 2021. (Dkt. #44). Defendant filed its reply on April 12, 2021 (Dkt. #45), and subsequently filed six notices of supplemental authority (Dkt. #46-48, 50-52). Accordingly, the motion is fully briefed and ripe for review.

## DISCUSSION

### A. Applicable Law

#### 1. Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the same procedure to evaluate motions for judgment on the pleadings under Rule 12(c) as for motions to dismiss under Rule 12(b)(6). *Altman* v. *J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015). This procedure requires courts to "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly

give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  The non-movant is entitled to relief if he or she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [the non-movant's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citation omitted).  Moreover, a complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (quoting *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### 2.   Jurisdiction and Choice of Law

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are diverse and the amount in controversy exceeds $75,000.  (*See* Compl. ¶¶ 3-6).

The Policy does not contain a choice of law provision, although the parties apply New York law in their briefing.  (*See* Def. Br. 12-14, 21; Pl. Opp. 8-12).  Given the parties' assumption that New York law controls, "such implied consent is sufficient to establish choice of law."  *Sasson* v. *Mann*, No. 15 Civ. 6601 (CS), 2019 WL 3532155, at *5 (S.D.N.Y. Aug. 2, 2019) (quoting *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 61 (2d Cir. 2004)); *see also Bennett* v. *Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013) (summary order) ("In a diversity case, where the parties have agreed to the application of the forum law — as evidenced by reliance on that law in the parties' briefing, as in this case — their agreement ends the choice-of-law inquiry.").  Thus, this Court will apply New York law to review Plaintiff's breach of contract claim. *See Arch Ins. Co.* v. *Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties impliedly consented in their briefing to the application of this state's law).

### 3. Insurance Disputes and Contract Interpretation Under New York Law

Under New York law, Plaintiff, as the policyholder, "bears the burden of showing that the insurance contract covers the loss."  *Morgan Stanley Grp., Inc.* v. *New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).  If Plaintiff carries this burden, Defendant then "bears the burden of proof to demonstrate that an exclusion in the policy applies to an otherwise covered loss."  *Michael J. Redenburg, Esq. PC* v. *Midvale Indem. Co.*, 515 F. Supp. 3d 95, 103-04 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Morgan Stanley Grp.*, 225 F.3d at 276 n.1).

9

Insurance policies are interpreted under general rules of contract interpretation, and a court must look to the language of the particular policy to determine its scope of coverage. *See Chen* v. *Ins. Co. of the State of Pa.*, 36 N.Y.3d 133, 138 (2020); *Olin Corp.* v. *Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). The initial interpretation of an insurance policy is a matter of law for the court to decide. *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Morgan Stanley Grp.*, 225 F.3d at 275). An insurance policy is "interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Beazley Ins. Co., Inc.* v. *ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Parks Real Est.*, 472 F.3d at 42).

The Court gives "unambiguous provisions of an insurance contract their plain and ordinary meaning." *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (alteration omitted). Unambiguous terms are interpreted in light of "common speech" and "the reasonable expectations of a businessperson." *Starr Indem. & Liab. Co.* v. *Excelsior Ins. Co.*, 516 F. Supp. 3d 337, 345-46 (S.D.N.Y. 2021) (quoting *Belt Painting Corp.* v. *TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003)). "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Consarc Corp.* v. *Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993); *see also Vill. of Sylvan Beach* v. *Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

"Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh.*, 25 N.Y.3d 675, 680 (2015) (internal quotation marks and citations omitted). "[I]f the language of the policy is susceptible of two reasonable meanings, the parties may submit extrinsic evidence of their intent at the time of contracting." *DeMoura* v. *Cont'l Cas. Co.*, — F. Supp. 3d —, No. 20 Civ. 2912 (NGG) (SIL), 2021 WL 848840, at *4 (E.D.N.Y. Mar. 5, 2021) (quoting *Newin Corp.* v. *Hartford Acc. & Indem. Co.*, 62 N.Y.2d 916, 919 (1984)). "However, parties cannot create ambiguity from whole cloth where none exists, because provisions are not ambiguous merely because the parties interpret them differently." *Universal Am. Corp.*, 25 N.Y.3d at 680 (internal quotation marks omitted).

## B.   Analysis

### 1.   Overview

The primary dispute between the parties pertains to whether Plaintiff has alleged that its or its customers' property sustained "direct physical loss or damage," as required to trigger coverage under the Policy. (*See* Def. Br. 11-18; Pl. Opp. 9-21; *see also* All-Risk Policy §§ I.C, III.A.1, III.E.4.a, VII.5). Plaintiff contends that at this stage of the proceedings, any contractual ambiguities related to the phrase "physical loss or damage" should be resolved in favor of finding coverage. (*See* Pl. Opp. 4, 11, 14). To this end, Plaintiff's proffered interpretation of the scope of coverage under the Policy provides that "physical

loss or damage" to property "happens when a covered cause of loss threatens to render or renders property unusable, unsuitable for its intended purpose, or unsafe for human occupancy and/or continued use." (Compl. ¶ 52). On this view, Plaintiff asserts that it has sufficiently alleged coverage under the Contingent Time Element, Civil or Military Authority, and other Time Element provisions of the Policy, insofar as COVID-19 and the government shutdown orders issued in the wake of the pandemic have rendered its property and the property of its direct and indirect customers "unusable for their intended purpose and/or unsafe for normal human occupancy or continued use." (*Id.* at ¶ 75; *see also* Pl. Opp. 2).[4]

Defendant has moved to dismiss on the grounds that Plaintiff has failed to plausibly allege the "direct physical loss or harm" necessary to invoke coverage under the Policy. (Def. Br. 11-12). Unsurprisingly, Defendant rejects Plaintiff's reading of the key contractual language and argues that mere loss of use of covered property does not, as a matter of New York law, establish "direct physical loss or damage" to trigger coverage under the Policy. (*Id.* at 12-14). In Defendant's view, Plaintiff's claim must fail because "[n]either the 'threatened presence' or the 'continuous spread' of the virus, nor the 'civil authority orders,'

---

[4] Plaintiff cites in the Complaint several other Policy provisions, including "Ingress/Egress" (All-Risk Policy § III.E.8), "Attraction Property" (*id.* § III.E.1), and "Accounts Receivable" (*id.* § II.D.1), that could serve as the basis for a claim for coverage. (*See* Compl. ¶¶ 55, 56, 58, 62). Yet, Plaintiff focuses its briefing on its purported contingent business interruption losses. (*See* Pl. Opp. 8 ("[T]his is predominantly a claim for contingent business interruption coverage[.]")). Because the Court ultimately determines that Plaintiff has failed to satisfy its burden of pleading "direct physical loss or damage" — a threshold requirement for coverage under any provision of the Policy — it need not independently assess Plaintiff's claim for coverage under every provision cited in the Complaint.

create any demonstrable alteration of any covered property," which is a prerequisite for coverage under the Policy.  (*Id.* at 17).  Even if Plaintiff has adequately alleged "direct physical loss or damage," Defendant argues that the Policy's contamination exclusion nevertheless precludes Plaintiff's recovery. (*Id.* at 21-24).

Before analyzing the parties' arguments, the Court pauses to clarify what Plaintiff has, and has not, alleged in its Complaint.  While the Complaint contains extensive discussions of the COVID-19 virus, the pandemic it engendered, and the means by which the virus can be transmitted, it studiously avoids alleging that the actual presence of the virus caused *any* physical loss or damage to *any* covered property of *any* of Plaintiff's direct or indirect customers.  (*See, e.g.*, Compl. ¶¶ 14-23).  Quite to the contrary, Plaintiff disclaims the actual presence of the virus on covered property.  (*See id.* at ¶ 71 ("[I]t was the threatened presence of COVID-19 and the civil authority orders … that caused loss or damage to [Plaintiff], *not the actual presence of any virus* at any covered location." (emphasis added))).[5]

In its opposition brief, Plaintiff seeks to cover all its bases by recasting its pleading as "alleg[ing] that the *actual* and/or threatened presence of SARS-CoV-2 has caused direct physical loss or damage to [Plaintiff's] property and

---

[5]     To be sure, Plaintiff asserts that "[d]irect physical loss or damage due to the continuous spread and transmission of COVID-19 and the above-referenced civil authority orders are covered causes of loss not otherwise excluded under" the Policy.  (Compl. ¶ 63).  The remainder of the Complaint, however, makes clear that these two causes are presented in the conjunctive.  In any event, there are no non-conclusory allegations regarding the actual presence of the COVID-19 virus on any covered property.

the property of its customers[.]"  (Pl. Opp. 5 (emphasis added)).  However, a careful review of Plaintiff's Complaint reveals only generic assertions about the ease with which the COVID-19 virus is transmitted (*see, e.g.*, Compl. ¶¶ 16-21), coupled with a convoluted, and ultimately unsuccessful, effort to reverse-engineer actual presence from the fact of the civil authority orders (*see, e.g.*, *id.* at ¶ 45 (arguing that such orders "evidence an awareness that COVID-19 causes physical loss or damage to property," particularly those orders "from the major markets that [Plaintiff] services")).

Also in its opposition papers, Plaintiff cites to COVID-19 outbreaks on the cruise ships of certain of Plaintiff's customers, while musing that "[i]t also is plausible that [Plaintiff's] hospital customers closed their cafeterias and stopped purchasing food from [Plaintiff] because SARS-CoV-2 was confirmed in the dozens of patients being treated there with COVID-19."  (Pl. Opp. 16). Factual allegations supporting these assertions, however, are nowhere to be found in the Complaint.  The Court will not permit Plaintiff to amend its pleading through its opposition papers.  *See Fac., Alumni, & Students Opposed to Racial References* v. *N.Y. Univ. L. Rev.*, No. 18 Civ. 9184 (ER), 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020) ("It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs."); *see generally Wright* v. *Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases for the proposition that a party may not amend its pleading through its opposition papers).

As discussed in the remainder of this Opinion, the Court agrees with Defendant that Plaintiff has failed to allege the type of "direct physical loss or damage" necessary to trigger coverage under any provision of the Policy. Plaintiff's focus on the loss of use occasioned by the pandemic-induced shutdowns does not suffice to demonstrate an entitlement to coverage, and Plaintiff has refrained to date from pleading the actual presence of the virus on covered property.  For these reasons, Plaintiff has not satisfied its initial burden to prove coverage and, by extension, has failed to plead a viable breach of contract claim.

### 2. The Court Grants Defendant's Motion for Judgment on the Pleadings

#### a. "Direct Physical Loss or Damage" Is Not an Ambiguous Contractual Term Under New York Law[6]

Courts both in and out of this District that have applied New York law to interpret the phrase "direct physical loss or damage," or nearly identical contractual language, have overwhelmingly held that the phrase's plain meaning does not extend to the loss of a property's intended use due to the

---

[6]     Plaintiff urges this Court to consider trade usage in the insurance industry to understand "physical loss or damage" (Pl. Opp. 11-14) and asks this Court to take judicial notice of certain publicly available insurance documents and regulatory filings (Dkt. #42), which materials purportedly support its position that industry trade usage "creates an ambiguity [in the Policy language] that should be construed in [Plaintiff's] favor" (Pl. Opp. 11).  The Court finds, however, that it would be improper to use extrinsic materials in order to inject ambiguity into Policy provisions where none otherwise exists.  *See Alexander & Alexander Servs., Inc.* v. *These Certain Underwriters at Lloyd's, London, Eng.*, 136 F.3d 82, 86 (2d Cir. 1998) ("If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."); *see also Consarc Corp.* v. *Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) ("[E]xtrinsic evidence may not be used to create an ambiguity in an otherwise unambiguous agreement.").

15

COVID-19 pandemic or related legal restrictions.  *See, e.g.*, *Broadway 104, LLC* v. *XL Ins. Am., Inc.*, — F. Supp. 3d —, No. 20 Civ. 3813 (PKC), 2021 WL 2581240, at *3 (S.D.N.Y. June 23, 2021) ("The phrase 'direct physical loss' describes tangible loss and cannot reasonably be read to encompass a regulatory restriction against certain uses"); *Off. Sol. Grp., LLC* v. *Nat'l Fire Ins. Co. of Hartford*, — F. Supp. 3d —, No. 20 Civ. 4736 (GHW), 2021 WL 2403088, at *7 (S.D.N.Y. June 11, 2021) ("New York courts have consistently maintained that 'direct physical loss of or damage' language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically unharmed by the virus"); *Deer Mountain Inn LLC* v. *Union Ins. Co.*, — F. Supp. 3d —, 20 Civ. 984 (BKS/DJS), 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021) (collecting cases). This Court finds the reasoning in these cases persuasive and sees no reason to depart from their conclusions.

While the Policy does not expressly define the phrase "direct physical loss or damage," the presence of an undefined term does not necessarily render that term ambiguous.  *See Lend Lease (U.S.) Const. LMB Inc.* v. *Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 29 (1st Dep't 2015).  Plaintiff relies on several cases to support its contention that there exists a spectrum of plausible interpretations of "direct physical loss or damage," as well as its broader argument that the Policy language encompasses loss of use.  (*See* Pl. Opp. 10).  But these cases are of

little use to the Court, as none applies New York law.[7]  As a matter of textual interpretation, the consensus among courts applying New York law is that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' require a showing of actual, demonstrable physical harm of some form to the insured premises — the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage."  *Visconti Bus Serv., LLC* v. *Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 915 (N.Y. Sup. Ct. 2021); *see also DeMoura*, 2021 WL 848840, at *6 (discerning from dictionary definitions that "direct physical loss of or damage to property" requires "tangible harm to that property" and does not include loss of use); *Michael Cetta, Inc.* v. *Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176-79 (S.D.N.Y. 2020) (concluding that "[t]he plain meaning of the phrase 'direct physical loss of or damage to' … connotes a negative alteration in the tangible condition of property").

Plaintiff attempts to discredit this consensus interpretation by claiming that it conflates the meaning of "loss" and "damage," thus rendering language in the provision superfluous.  (Pl. Opp. 9-10).  However, courts applying New York law have understood "physical loss" and "physical damage" as distinct

---

[7]  The cases upon which Plaintiff relies for this proposition apply Missouri, Wisconsin, and California law.  *See Studio 417, Inc.* v. *Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020); *Manpower Inc.* v. *Ins. Co. of the State of Pa.*, No. 08 Civ. 85 (LSA), 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009); *Total Intermodal Servs., Inc.* v. *Travelers Prop. Cas. Co. of Am.*, No. 17 Civ. 04908 (AB) (KSx), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018).  At least one court in this District has rejected similar arguments premised upon such out-of-state cases.  *See Food for Thought Caterers Corp.* v. *Sentinel Ins. Co. Ltd.*, — F. Supp. 3d —, No. 20 Civ. 3418 (JGK), 2021 WL 860345 at *5 (S.D.N.Y. Mar. 6, 2021) (explaining that *Studio 417* was predicated on the conclusion that "'physical loss' includes 'loss of use,' which is contrary to New York law").

concepts: "physical loss" may refer to circumstances in which a property's value is entirely lost, as through theft or complete destruction, whereas "physical damage" may refer to circumstances in which property is harmed but not wholly obliterated.  *See Jeffrey M. Dressel, D.D.S., P.C.* v. *Hartford Ins. Co. of the Midwest, Inc.*, No. 20 Civ. 2777 (KAM) (VMS), 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021) (citing *DeMoura*, 2021 WL 848840, at *6)*; see also Roundabout Theatre Co.* v. *Continental Cas. Co.*, 751 N.Y.S.2d 4, 7 (1st Dep't 2002) (explaining that "'loss of' could refer to the theft or misplacement of … property that is neither damaged nor destroyed").

Moreover, Plaintiff neglects to consider that its interpretation of "direct physical loss or damage" would render certain provisions of the insurance contract superfluous.  Time Element coverage under the Policy is limited to losses during the "applicable PERIOD OF LIABILITY," and this period for buildings and equipment begins "from the time of physical loss or damage of the type insured" and ends when the property "with due diligence and dispatch" could be "[r]epaired or replaced" and "[m]ade ready for operations." (All-Risk Policy § III.C.1.a.(1)-(2)).  If the Policy's coverage extended to mere loss of use, it would render the end dates of the Time Element coverage meaningless, as no repairs or replacements are necessary to remedy a property that has nothing *physically* wrong with it.  *See Michael Cetta, Inc.*, 506 F. Supp. 3d at 177 ("[Plaintiff's] reading of the Policy — that 'loss of use' is covered — additionally would render the two possible end dates of the 'period of restoration' provision meaningless when applied to circumstances like those

18

presented in this case."); *Roundabout Theatre*, 751 N.Y.S.2d at 7-8 (finding that
policy provisions contemplating "the exercise of due diligence and dispatch to
*rebuild, repair, or replace*" "support the conclusion that coverage is limited to
instances where the insured's property suffered direct physical damage"
(emphasis in original)).  Thus, it is Plaintiff's preferred reading — not the
generally agreed-upon interpretation of this language — that violates a core
principle of contractual interpretation.  *See Cnty. of Columbia* v. *Cont'l Ins. Co.*,
83 N.Y.2d 618, 628 (1994) ("An insurance contract should not be read so that
some provisions are rendered meaningless."); *see also LaSalle Bank N.A.* v.
*Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[A]n interpretation
of a contract that has the effect of rendering at least one clause superfluous or
meaningless … is not preferred and will be avoided if possible." (internal
quotation marks and citation omitted)).

### b.   Mere Loss of Use of Insured Property Does Not Constitute "Direct Physical Loss or Damage"

Having reviewed the relevant policy language and found it to be
unambiguous, the Court next considers whether Plaintiff has alleged facts
sufficient to bring its claimed losses within the coverage afforded under the
Policy.  In this regard, Plaintiff contends that it has suffered physical harm
because its "property and the property of its direct and indirect customers has
lost functionality and/or been rendered unusable for their intended purpose,
and/or unsafe for normal human occupancy or continued use."  (Compl. ¶ 75).
But as has already been discussed, courts applying New York law have been
consistent in interpreting the phrase "direct physical loss or harm" to exclude

19

"mere loss of use."  *See, e.g., Food for Thought Caterers Corp.* v. *Sentinel Ins. Co., Ltd.*, — F. Supp. 3d —, No. 20 Civ. 3418 (JGK), 2021 WL 860345, at *3 (S.D.N.Y. Mar. 6, 2021) ("[C]ourts applying New York law have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage when the policy provides that such coverage requires evidence of physical damage or physical loss.").

An important case on this point is *Roundabout Theatre Company, Inc.* v. *Continental Casualty Company*, in which the First Department held that an insurance policy that covered "all risks of direct physical loss or damage" was "limited to losses involving physical damage to the insured's property."  751 N.Y.S.2d at 7.  Based upon this interpretation, the First Department determined that a theater forced by government order to cancel performances due to a nearby construction accident had not met its burden of demonstrating a covered loss.  *Id.* at 4, 7-8.  Courts in this District have adopted the reasoning of *Roundabout Theatre* and interpreted the case to have "specifically repudiated the [position] that the phrase 'loss of' must include 'loss of use of' the insured premises."  *Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).  In *Newman Myers*'s discussion of *Roundabout Theatre*, the court reasoned: "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself[.]"  *Id.*; *see also Phila. Parking Auth.* v. *Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (holding that "direct physical loss or damage" requires that "the interruption in

business must be caused by some physical problem with the covered property").

Plaintiff argues that *Newman Myers* establishes that "the physical loss or damage" need not "be tangible, structural or even visible." (Pl. Opp. 20 (quoting *Newman Myers*, 17 F. Supp. 3d at 330)). However, at least one sister court in this District has contradicted this aspect of *Newman Myers*'s understanding of this phrase. *See Michael Cetta, Inc.*, 506 F. Supp. 3d at 176 ("Putting these [dictionary] definitions together demonstrates that the 'requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude … alleged losses that are intangible or incorporeal.'"). Even if the Court were to accept the premise that wholly unobservable loss may trigger coverage under an insurance policy with such language, the cases discussed in *Newman Myers* that extended coverage to certain intangible losses are distinguishable because those losses all involved "some compromise to the physical integrity of the [property]" by "either a physical change for the worse in the premises" going beyond mere loss of functionality or a risk to the premises' "physical integrity." *Id.*; *accord Rye Ridge Corp.* v. *Cincinnati Ins. Co.*, — F. Supp. 3d —, No. 20 Civ. 7132 (LGS), 2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021). Plaintiff's construction of "physical loss or damage," at least as articulated in its Complaint, is simply irreconcilable with cases applying New York law in this context.[8]

---

[8]     Plaintiff attempts to distinguish *Roundabout Theatre* and *Newman Myers* by stressing that they were decided on summary judgment and with full factual records that were materially distinguishable from the case at bar. (Pl. Opp. 19-20). But the procedural

### c. Plaintiff Has Not Alleged the Actual Presence of COVID-19 on Insured Property

To reiterate, Plaintiff alleges in the Complaint that the "threatened presence of COVID-19 and the civil authority orders ... not the actual presence of any virus at any covered location," caused the loss or damage that gave rise to its insurance claim. (Compl. ¶ 71). Under the caselaw just discussed, these allegations are insufficient to state a claim for coverage under the Policy. Perhaps in recognition of that fact, Plaintiff argues in opposition to the instant motion that it has also "alleged that the *actual* ... presence of SARS-CoV-2 has caused direct physical loss or damage[.]" (Pl. Opp. 5 (emphasis added)). As noted earlier, the Court finds no non-conclusory allegations in the Complaint of actual presence of the virus on any covered property, much less any actual physical loss or damage caused by same. In this section, it considers the legal significance of this omission.

This Court recognizes that several courts in this Circuit have concluded, with particular respect to the COVID-19 virus, that even allegations of actual

---

postures of these cases do not render them inapposite, as the Court is here tasked with interpreting identical language in an insurance contract (*i.e.*, "direct physical loss or damage"), which interpretation is a question of law that may be decided on a motion for judgment on the pleadings. *See Morgan Stanley Grp., Inc.* v. *New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). And for the same reason, the factual distinctions between the cases do not diminish their applicability. The threshold question to determine the existence of coverage is the same for all of the policies across these cases: did covered property suffer "direct physical loss or damage"? (*Compare* All-Risk Policy § VII.5 (defining "covered loss" as "[a] loss to covered property caused by *direct physical loss or damage* insured by this Policy" (emphasis added)), *with Newman Myers Kreines Gross Harris, P.C.* v. *Great N. Ins. Co.*, 17 F. Supp. 3d 323, 326 (S.D.N.Y. 2014) ("The Policy provides coverage, under specified circumstances, for loss of business income and extra expenses occasioned by '*direct physical loss or damage.*' (emphasis added), *and with Roundabout Theatre Co.* v. *Continental Cas. Co.*, 751 N.Y.S.2d 4, 7 (1st Dep't 2002) ("[T]he policy clearly and unambiguously provides coverage only where there is *direct physical loss or damage* to the insured's property[.]" (emphasis added))).

presence fail to demonstrate a covered "direct physical loss or damage." *See, e.g.*, *Food for Thought Caterers Corp.*, 2021 WL 860345, at \*5 ("[C]ontamination of the premises by a virus does not constitute a 'direct physical loss' because the virus's presence can be eliminated by routine cleaning and disinfecting, and an item or structure that merely needs to be cleaned has not suffered a direct physical loss." (internal quotation marks omitted)); *Kim-Chee LLC* v. *Phila. Indem. Ins. Co.*, — F. Supp. 3d —, No. 20 Civ. 1136 (GWC), 2021 WL 1600831, at \*6 (W.D.N.Y. Apr. 23, 2021) ("In the absence of plausible allegations that the virus persists within insured premises in the manner of gasoline or other contaminants, the reduction in business activity mandated by the state shutdown orders is … not the consequence of a direct physical loss or damage to the insured premises."); *Tappo of Buffalo, LLC* v. *Erie Ins. Co.*, No. 20 Civ. 754V (Sr), 2020 WL 7867553, at \*4 (W.D.N.Y. Dec. 29, 2020) (Report and Recommendation) ("[E]ven assuming that the virus physically attached to covered property … it did not constitute the direct, physical loss or damage required to trigger coverage because [its] presence can be eliminated by routine cleaning and disinfecting." (internal quotation marks omitted) (quoting *Promotional Headware Int'l* v. *Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1204 (D. Kan. 2020))); *see also Visconti*, 142 N.Y.S.3d at 915 ("[E]ven if Covid-19 were found at [the] premises, it would not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated by routine cleaning and disinfecting.").  However, this Court is reluctant to conclude, as a matter of law, that Plaintiff would be unable, under any

23

circumstances, to allege physical loss or damage caused by the presence of the COVID-19 virus on covered property.  The Court is ill-equipped to consider, much less reject, factual allegations that Plaintiff has not yet advanced.  More fundamentally, the Court is concerned that relying on the efficacy of cleaning and disinfecting measures may exceed what it may properly consider in the Rule 12(c) context.  Conversely, the Court will not engage with Plaintiff's argument that the presence of "harmful microscopic or intangible substances" — such as "radioactive dust, lead, asbestos, noxious gases, and other harmful conditions that impact property" — dictates the conclusion that the presence of SARS-CoV-2 virions qualifies as "direct physical loss or damage."  (Pl. Opp. 14-15 & nn.57-61).  Plaintiff has not sourced these arguments to any allegations in the Complaint.

Focusing on what Plaintiff has pleaded, rather than what Plaintiff would have the Court believe it has pleaded, the Court concludes that Plaintiff has failed to plausibly allege that any covered property — either Plaintiff's property or that of its customers, suppliers, contract manufacturers, or contract services — sustained "direct physical loss or damage" from COVID-19.  As such, the Court proceeds to consider Plaintiff's claim for coverage under the Policy's "Civil or Military Authority" provision.

### d. Plaintiff Fails to Show Coverage Under the Civil or Military Authority Provision[9]

To successfully claim coverage for a business interruption under the Policy's "Civil or Military Authority" provision, Plaintiff must demonstrate that: (i) "an order of civil or military authority prohibits access to a covered location"; and (ii) "such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within [one mile from a covered location]." (All-Risk Policy § III.E.2.a). For several reasons, Plaintiff's claim to coverage under this provision fails.

*First*, because Plaintiff has failed to allege a qualifying "physical loss or damage," Plaintiff has necessarily failed to allege that any of the civil authority orders was "caused by physical loss or damage of the type insured by this Policy." (All Risk Policy § III.E.2.a). That alone requires rejection of Plaintiff's claim for coverage under this provision.

*Second*, Plaintiff does not allege that any of the government shutdown orders "prohibit[ed] access to a covered location," as that phrase is properly understood. Plaintiff alleges that the government shutdown orders closed its "business," "premises," and "operations," as well as those of its customers (*see* Compl. ¶¶ 45, 61, 90, 97), but the relevant Policy provision requires that a

---

[9] The Court takes judicial notice of the orders issued by the Mayors of New York, Los Angeles, and Washington, D.C., as they are public documents containing facts that are both "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Casey* v. *Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) ("Courts may take judicial notice of public documents or matters of public record.").

government order imposes a complete denial of access, *see, e.g., Michael Cetta, Inc.*, 506 F. Supp. 3d at 184 ("[Plaintiff] has not alleged that access was ever denied completely … if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access.").  In New York City, Mayor Bill de Blasio permitted Plaintiff's primary customers (food and drink establishments) to "remain open for the sole purpose of providing take-out or delivery service."  N.Y.C. Emergency Exec. Ord. No. 100, § 7.  In Los Angeles, restaurants were permitted to "continue to operate for purposes of preparing and offering food to customers via delivery service."  Pub. Ord. Under City of Los Angeles Emergency Auth., § 3 (Mar. 15, 2020).  And in Washington, D.C., non-essential businesses were permitted to continue "minimum basic operations," which included the "minimum necessary activities to maintain the value of the business's inventory, ensure security, process payroll and employee benefits, and related functions."  D.C. Mayor's Ord. 2020-054, §§ III.1, IV.6.a (Mar. 30, 2020).  While Plaintiff alleges that these orders denied access to its and its customers' premises' intended or full use, such allegations are insufficient to trigger coverage under a provision that covers losses incidental to a prohibition on access.  *See Food for Thought Caterers Corp.*, 2021 WL 860345, at *6 ("[Plaintiff's] allegation that the civil authority orders prohibited access to its 'property for its intended purpose' is not enough to trigger the Civil Authority coverage provision. The Policy provides for coverage if the civil authority denies all access to the insured property, not simply its full use"); *see also Phila. Parking Auth.*, 385 F. Supp. 2d at 289

("While this unprecedented order may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage under Plaintiff's policy.").

*Third,* Plaintiff notes that certain government shutdown orders were enacted, in part, because COVID-19 "physically is causing property loss and damage" (*see* Compl. ¶ 30; *see also id.* at ¶¶ 37, 40-41), but these statements — which the Court has earlier characterized as an attempt at reverse-engineering actual presence — do not establish that Plaintiff or its customers sustained a covered loss under the Policy.  As an initial matter, Plaintiff has not clearly pleaded that the virus has infiltrated any covered property.  (*See id.* at ¶ 71 (disclaiming the presence of the virus on any insured property)).  Irrespective of Plaintiff's pleading, these pronouncements in shutdown orders are "too general and unsupported by specific facts" to establish, by themselves, that any of Plaintiff's covered property actually endured "physical loss or damage."  *Food for Thought Caterers Corp.*, 2021 WL 860345, at *5.  Furthermore, there is no support for the proposition that generalized and speculative statements in a municipal order "can alter the meaning of preexisting contract terms[.]"  *Sharde Harvey, DDS, PLLC* v. *Sentinel Ins. Co., Ltd.*, No. 20 Civ. 3350 (PGG) (RWL), 2021 WL 1034259, at *10 (S.D.N.Y. Mar. 18, 2021) (Report and Recommendation).

Accordingly, Plaintiff has not satisfied its burden to show coverage under the "Contingent Time Element," "Civil or Military Authority," or any other provision of the Policy.  As the Court has stressed, coverage under these

provisions hinges entirely on the occurrence of "physical loss or damage," and Plaintiff has not satisfied its burden to adequately plead such loss or damage.

### 3.    The Court Grants Leave to Amend

Finally, the Court addresses Plaintiff's request for leave to amend its pleadings.  (Pl. Opp. 25).  Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  However, it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019), and such leave may be denied if the amendment would be futile, *see Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020).  Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding that amendment is not futile where an amended complaint would be "sufficient to withstand a motion to dismiss under Rule 12(b)(6)").

The Court understands that Plaintiff's focus on the threatened, as distinguished from the actual, presence of the virus on covered property is a strategic one.  Pleading the actual presence of the COVID-19 virus on such property would seemingly implicate the Policy's contamination exclusion, which numerous other courts in this Circuit have cited as a basis for denying coverage in analogous factual settings.  *See, e.g.*, *100 Orchard St., LLC* v.

*Travelers Indem. Ins. Co. of Am.*, — F. Supp. 3d —, No. 20 Civ. 8452 (JMF), 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021) (dismissing a similar coverage dispute on coverage exclusion grounds, without deciding whether the plaintiff established the existence of coverage); *see also Broadway 104, LLC*, 2021 WL 2581240, at *5 (dismissing litigation on coverage and exclusion grounds); *Off. Sol. Grp., LLC*, 2021 WL 2403088, at *8 (same).  This Court has reason to be skeptical that Plaintiff will be able to thread the needle of alleging facts that implicate coverage under the Policy without simultaneously implicating the contamination exclusion.  However, because the Court is unfamiliar with the evidence that Plaintiff currently possesses, it is loath to find that any such effort would be futile.  Accordingly, the Court will grant Plaintiff leave to amend the Complaint, but it cautions Plaintiff to be mindful both of this Opinion and of the many decisions from courts in this Circuit that have issued since the instant motion was filed.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion for judgment on the pleadings is GRANTED.  If Plaintiff wishes to file an amended complaint, it may do so on or before **October 7, 2021**.  The Clerk of Court is directed to terminate the motion at docket entry 34.

SO ORDERED.

Dated:      September 15, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge