M4LPCHED

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   CHEF'S WAREHOUSE, INC.,

 4                    Plaintiff,

 5           v.                          20 CV 04825 (KPF)
                                         Telephone Decision
 6   LIBERTY MUTUAL INSURANCE CO.,
     ET AL.,
 7
 8                    Defendants.

     ------------------------------x
 9                                       New York, N.Y.
                                         April 21, 2022
10                                       12:06 p.m.

11   Before:

12                    HON. KATHERINE POLK FAILLA,

13                                       District Judge

14                 APPEARANCES VIA TELECONFERENCE

15   REED SMITH, LLP
          Attorneys for Plaintiff
16   BY:  MATTHEW D. ROSSO
          JOHN NORIG ELLISON
17
18   FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC
          Attorneys for Defendants
     BY:  RACHEL ROSE HAGER
19
20
21
22
23
24
25
```

M4LPCHED

1          (Case called)

2          MR. ELLISON:  Good afternoon, your Honor.  It's John

3    Ellison and Matt Rosso for Chef's Warehouse.

4          THE COURT:  Good afternoon, and thank you very much

5    for participating.

6          And representing the defendant?

7          MS. HAGER:  Good afternoon, your Honor.  Rachel Hager

8    for the defendants from the law firm of Finazzo, Cossolini,

9    O'Leary, Meola & Hager.

10         THE COURT:  Thank you so much.

11         All right.  Good afternoon to each of you, and I

12   appreciate your willingness to participate by telephone.  I

13   have an oral decision in this matter, and I wanted to get it to

14   you as quickly as I could.  What I would ask, and what I'll

15   give you a moment to do, is that you please mute your line

16   because I'm going to be reading this decision into the record.

17   It is a little bit lengthy, and I am going to ask Ms. Hager to

18   obtain a copy of the transcript of the decision in the ordinary

19   course, and if that is done, then I will receive it

20   automatically.  So I'll give you a moment to mute, and then I

21   will begin.  Thank you.

22         (Pause)

23         I will begin.

24         As the parties know, the motion now before the Court

25   is defendant Employer's Insurance Company of Wausau's second

M4LPCHED

1   dispositive motion at the pleading stage of this case.

2   Plaintiff, the Chef's Warehouse, Incorporated, a purveyor of

3   specialty foods to various culinary markets, brings claims for

4   breach of contract and declaratory judgment alleging that

5   defendant breached its insurance coverage obligations under a

6   first-party property policy -- which I'll call "the policy" --

7   when it denied plaintiff's claim for losses related to business

8   interruptions caused by the Covid-19 pandemic.  Defendant has

9   moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to

10  dismiss.

11          In the first round of motion practice, the Court

12  granted defendant's motion for judgment on the pleadings,

13  reasoning that plaintiff claimed harm relating to the loss of

14  use of its and its customers' property occasioned by the

15  pandemic, did not constitute "direct physical loss or damage"

16  necessary to trigger coverage under the policy.

17          Plaintiff has since filed the amended complaint, which

18  supplements its allegations to include the actual presence of

19  SARS-CoV-2 virions on property covered by the policy.

20          On this motion, plaintiff's theory of physical loss or

21  damage centers on the claim that the presence of SARS-CoV-2

22  virions transformed the air and surfaces inside property,

23  rendering plaintiff's property, and that of its customers, a

24  dangerous infection hazard.  Plaintiff further contends that

25  eradicating the virus entails more than routine cleaning or

M4LPCHED

1    disinfecting, thus, making the virus analogous to asbestos and

2    resilient substances, whose presence courts have determined can

3    cause direct physical damage.

4         This Court remains reluctant to agree with certain of

5    its colleagues, who have resorted to extra-record evidence to

6    conclude that the Covid-19 virus did not meaningfully resist

7    common methods of cleaning and, thus, cannot cause direct

8    physical damage.  To this Court, that appears to be an

9    empirical question that cannot be resolved without further

10   factual development.

11        However, as explained in a few moments, this Court

12   concludes that plaintiff has continued to plead conclusory

13   allegations in support of its claims that physical damage

14   caused by the presence of the virus.

15        Plaintiff asks this Court to trust that discovery will

16   reveal the true extent of property damage caused by Covid-19,

17   but its promises of future information are insufficient to

18   buttress otherwise inadequate allegations.  At the same time,

19   the Court acknowledges the emergence of certain Second Circuit

20   decisions that touch on the risk to property posed by the

21   Covid-19 virus.  The tenor of this still-developing precedent

22   would seem to cut against plaintiff's claim for coverage in

23   coverage in this case, and perhaps even of this Court's view of

24   the issue.

25        Bracketing these difficult questions of coverage under

M4LPCHED

1     the policy, it is clear that plaintiff's claim falls squarely

2     within the policy's contamination exclusion.  As such, even

3     were the Court to find that plaintiff had adequately pleaded

4     coverage, it would find plaintiff's claim for coverage to be

5     barred by the express terms of the policy.

6              The Court will, therefore, grant defendant's second

7     motion, dispositive motion, which is a motion to dismiss the

8     amended complaint.

9              Turning now to some background facts and procedural

10    history.  The factual background of this case is outlined in

11    some detail in the Court's prior opinion on defendant's motion

12    for judgment on the pleadings, and the Court presumes

13    familiarity with the facts of this case.  Accordingly, the

14    Court will recite only those facts necessary to resolve the

15    instant motion.

16             Plaintiff purchased an all-risk insurance policy with

17    defendant that provided business interruption coverage for a

18    term running from August 1st, 2019, through August 1st of 2020.

19    The policy extended coverage to plaintiff's actual losses

20    sustained and extra expenses incurred from a business

21    interruption caused by "direct physical loss or damage" to the

22    covered property.

23             The policy contained several time-element provisions

24    detailing the types of business interruptions covered by the

25    policy.  As relevant to this case, the policy's contingent

M4LPCHED

time-element provision provides coverage for business

interruption stemming from physical loss or damage suffered by

plaintiff or one of plaintiff's direct or indirect customers.

In addition, the policy's civil or military authority

provision extends coverage to business interruptions sustained

"if an order of civil or military authority prohibits access to

a covered location provided such order is caused by physical

loss or damage of the type insured by this policy at a covered

location" or within the number of statutory miles from a

covered location as specified by the policy.

The policy also contains several coverage exclusions,

including the contamination exclusion.  Under the contamination

exclusion, the policy does not cover "contamination and any

costs due to contamination, including the inability to use or

occupy property or any cost of making property safe or suitable

for use or occupancy except as provided elsewhere in this

policy."

The policy then defines "contamination" as any

condition of property that results from a contaminant.  With

"contaminant" defined to include a virus or any disease-causing

or illness-causing agent.

On April 29th, 2020, plaintiff provided a notice to

defendant of a claim for time-element losses, including under

the civil authority and contingent time-element provision.  In

connection with the pandemic-induced business interruption

M4LPCHED

1    faced by plaintiff and its customers, defendant denied this

2    claim on May 4th of 2020, explaining that the time-element

3    coverages available under your policy requires physical damage

4    by a peril insured against.  Defendant concluded that as there

5    was no physical damage, and contamination is an excluded peril,

6    there is no coverage provided for plaintiff's business

7    interruption loss.

8         On the basis of this denial, on June 23rd of 2020,

9    plaintiff filed the underlying complaint initiating this

10   lawsuit.  Defendant filed a motion for judgment on the

11   pleadings on February 8th of 2021, which the Court granted in

12   an opinion and order dated September 15th of 2021.

13        In granting defendant's motion for judgment on the

14   pleadings, the Court determined that plaintiff had not

15   adequately alleged that it, or its customers, had suffered

16   direct physical loss or damage, a threshold requirement for

17   coverage under any provision of the policy.  Indeed, the

18   underlying complaint assiduously avoided alleging the actual

19   presence of Covid-19 on any covered property.  Instead,

20   plaintiff grounded its coverage claim on the threatened

21   presence of COVID-19 and the various governmental shutdown

22   orders that rendered its property and the property of its

23   customers unusable for their intended purposes.

24        The Court held that this was insufficient to satisfy

25   the requirement of direct physical loss or damage to trigger

M4LPCHED

1   coverage because the uninterrupted lines of cases applying

2   New York law make clear that the contractual phrase "direct

3   physical loss or damage" was unambiguous in demanding actual,

4   demonstrable physical harm of some form and did not extend to

5   the mere loss of a property's intended use due to the Covid-19

6   pandemic or related governmental restrictions.

7           Additionally, the Court dismissed plaintiff's claim to

8   coverage under the policy's civil and military authority

9   provision because, No. 1, plaintiff failed to allege a

10  qualifying physical loss or damage to implicate the type of

11  civil authority order giving rise to coverage.  No. 2, the

12  civil authority orders dealing with the pandemic did not impose

13  a complete denial of access, as required to invoke coverage.

14  And No. 3, plaintiff had not substantiated its argument that

15  any governmental shutdown order was enacted in response to the

16  physical damage or loss caused by the pandemic.

17          The Court's earlier opinion also addressed the

18  possibility that plaintiff might be able to plead the

19  occurrence of direct physical loss or damage resulting from the

20  actual presence of the virus on any covered property.  The

21  Court diverged from several District Courts in this circuit,

22  which had held that even allegations positing the actual

23  presence of the virus failed to constitute physical loss or

24  damage because the virus could be easily cleaned and removed

25  from surfaces.

M4LPCHED

1       This Court expressed concern that relying on the

2  efficacy, or lack thereof, of cleaning and disinfecting

3  measures might exceed the bounds of what it may properly

4  consider on a rule 12(c) motion.

5       The Court granted plaintiff leave to replead

6  allegations bearing on the actual presence of Covid-19 on

7  covered property, but in so doing expressed scepticism, and I

8  quote, "that plaintiff will be able to thread the needle on

9  alleging facts that implicate coverage under the policy without

10  simultaneously implicating the contamination exclusion."

11       Plaintiff filed the amended complaint on October 7th

12  of 2021, and among the additions to this amended pleading is

13  new information concerning the transmission of Covid-19 and the

14  modes of damaging property.  On this front, plaintiff alleges

15  that Covid-19 can be transmitted by aerosol, fecal bio-aerosols

16  and fomites from which it follows the SARS-CoV-2 causes

17  property damage, and I quote, "by rendering property unsafe and

18  unfit for habitation case and use by transforming both the

19  shared air breathed by the property's occupants and the

20  physical surfaces of the property itself."

21       Plaintiff also alleges facts going to the resiliency

22  of Covid-19, contending that it can remain on surfaces and

23  suspended in the air for an extended period and that addressing

24  the coronavirus is not nearly a matter of cleaning.  And I've

25  been quoting from the amended complaint in this section, as I

M4LPCHED

1    will continue to do for the next paragraph or so.

2            Also new to plaintiff's pleadings is the allegation

3    that SARS-CoV-2 virions were present in Chef's Warehouse's

4    locations, as well as those of its customers, including cruise

5    lines, hospitals, healthcare facilities, theme parks, hotels

6    and restaurants.  According to plaintiff, the presence of

7    SARS-CoV-2 "compromised the physical integrity of these

8    properties, tangibly altered the property and air therein and

9    rendered the properties unusable and functionally uninhabitable

10   for their intended purpose."

11           Plaintiff further alleges that the government's

12   failure to control the pandemic exacerbated the spread of

13   Covid-19, as well as the resulting physical damage or loss.

14           On January 11th of 2022, defendant moved to dismiss

15   the amended complaint.  Plaintiff filed opposition papers on

16   March 3rd of 2022, and defendant filed its reply brief on

17   March 24th of 2022.  On April 8th of 2022, defendant filed a

18   notice of supplemental authority advising the Court of recent

19   decisions in this district issued by Judge Gardephe, Judge

20   Abrams and Judge Vyskocil and in the Appellate Division of the

21   First Judicial Department of New York State Supreme Court

22   authored by Judge Gische.

23           So turning now to the applicable standards, and I know

24   the parties are aware of these; so I'll just summarize them

25   briefly.  A Court considering a motion to dismiss for failure

M4LPCHED

1   to state a claim under Federal Rule of Civil Procedure

2   12(b)(6), should draw all reasonable inferences in plaintiff's

3   favor, assume all well-pleaded factual allegations to be true,

4   and determine whether they plausibly give rise to an

5   entitlement to relief.

6        I'm quoting here from *Faber v. Metropolitan Life*

7   *Insurance Company*, 648 F.3d 98 (2d Cir. 2011).  To survive a

8   motion to dismiss, a complaint must contain sufficient factual

9   matter accepted as true to state a claim to relief that is

10  plausible on its face.  And I quote here from *Ashcroft v.*

11  *Iqbal,* 556 U.S. 662, 678 (2009), and that case, in turn, was

12  quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544,

13  (2007).

14       The plausibility requirement is not akin to a

15  probability requirement, but it asks for more than a sheer

16  possibility that the defendant has acted unlawfully.  I quote

17  then again from the *Ashcroft* decision.

18       Let me also note that in evaluating a motion to

19  dismiss, the court may consider only a narrow universe of

20  materials, including the complaint itself, documents appended

21  to the complaint or incorporated by reference, matters of which

22  judicial notice may be taken and documents that are properly

23  deemed integral to the complaint.  The standards for what may

24  be included are set forth in Second Circuit cases such as

25  *Goel v. Bunge, Limited*, 820 F.3d 554, (2d Cir. 2016).

M4LPCHED

1         So I turn now to the gating issue of interpreting

2   insurance contracts under New York law.  The policy does not

3   contain a choice-of-law provision but the parties apply

4   New York law in their briefing, and this implied consent is

5   sufficient to establish choice of law, and I will use New York

6   law to assess plaintiff's breach of contract claim.

7         Under New York law, an insurance contract is

8   interpreted to give effect to the intent of the parties, as

9   expressed in the clear language of the contract.  I am quoting

10  here from *10012 Holdings, Incorporated v. Sentinel Insurance*

11  *Company Limited*, 21 F.4th 216, a Second Circuit decision from

12  last year.

13        The initial interpretation of the contract is a matter

14  for the Court to decide, and I quote there from *Morgan Stanley*

15  *Group Incorporated v. New England Insurance Company,* 225 F.3d

16  270, (2d. Cir. 2000).  If the language of an insurance policy

17  is doubtful or uncertain in its meaning, any ambiguity must be

18  resolved in favor of the insured and against the insurer.  I

19  quote here from *Westview Associates v. Guaranty National*

20  *Insurance Company,* 95 N.Y.2d 334 (2000).

21        But where the provisions of the policy are clear and

22  unambiguous, they must be given their plain and ordinary

23  meaning and courts should refrain from rewriting the agreement.

24  That's from *U.S. Fidelity & Guaranty Company v. Annunziata*,  67

25  N.Y.2d 229, a Court of Appeals decision from 1986.

M4LPCHED

1          As the party seeking coverage, plaintiff bears the

2    burden of showing that the insurance contract covers the loss.

3    The *Morgan Stanley Group* decision I mentioned earlier discusses

4    this issue.  If plaintiff satisfies this initial coverage

5    burden, defendant, as an insurance carrier, then bears the

6    burden of proof to demonstrate that an exclusion in the policy

7    applies to an otherwise covered loss.  I quote here from

8    *Michael J. Redenburg, Esquire PC v. Midvale Indemnity Company*,

9    515 F. Supp. 3d 95 (S.D.N.Y. 2021).

10          An exclusion from coverage is read narrowly and will

11    only save to bar coverage of an insured's claim where it is

12    stated in clear and unmistakable language, is subject to no

13    other reasonable interpretation, and applies in the particular

14    case.  And the *Westview Associates* case I spoke of a few

15    moments ago is where that quote is from.

16          Turning now to the analysis of these claims.

17    Plaintiff urges that the amended complaint's detailed

18    allegations regarding the physical presence of SARS-CoV-2 on

19    its and its customer's property suffices to plead direct

20    physical loss or damage necessary to trigger defendant's

21    obligation to ensure contingent business interruption and other

22    losses under the policy.  And relatedly, plaintiff argues that

23    the defendant's proffers a tortured construction, and that's a

24    quote, of the contamination exclusion, which does not bar

25    coverage in this case.

M4LPCHED

1    As the Court will explain, binding precedent would

2    appear to foreclose many of plaintiff's arguments in favor of

3    coverage, but even assuming plaintiff has managed to allege

4    direct physical or loss damages due to the actual presence of

5    Covid-19, the contamination exclusion unambiguously applies to

6    plaintiff's claim.

7    I turn first to the issue of policy coverage.

8    Plaintiff argues that Chef's Warehouse and its customers

9    suffered physical loss or damage to property due to:  One, the

10   actual presence of SARS-CoV-2 on their property; two, the

11   continuing threat of SARS-CoV-2 on their property; three, the

12   resulting stay-at-home orders; and, four, the government's

13   failure to contain SARS-CoV-2.  These interrelated causes of

14   harm are all sourced from the Covid-19 virus, which plaintiff

15   characterizes as a "Deadly, resilient physical substance that

16   attaches to and alters indoor air and surfaces, thereby

17   impairing the physical function of covered property for its

18   intended use and purpose."

19   Plaintiff cites several scientific studies, as well as

20   CDC guidance on viral surface transmission for the proposition

21   that routine cleaning and disinfecting is insufficient to

22   remove the presence of SARS-CoV-2 in a manner that would make

23   the property safe for use.  As a result, plaintiff and its

24   customers have allegedly experienced ongoing physical loss or

25   damage to property despite the remediation measures they have

M4LPCHED

1    implemented.

2              Plaintiff additionally argues that the average insured

3    that purchases an all-risk policy covering losses resulting

4    from physical loss or damage would reasonably construe that

5    phrase to encompass a circumstance where the policyholder has

6    lost the ability to physically use this property due to the

7    actual presence of a dangerous physical substance in and on its

8    property.

9              The Second Circuit has recently spoken to the reach of

10   an insurance policy that covers losses stemming from direct

11   physical loss or damage to property.  In *10012 Holdings*

12   *Incorporated v. Sentinel Insurance Company Limited*, the Second

13   Circuit relied on *Roundabout Theater Company v. Continental*

14   *Casualty Company,* 751 N.Y.S.2d 4 (1st Dep't 2002) and every

15   other New York State court to have decided the issue -- and

16   that is a quote -- in holding that, "under New York law, the

17   terms 'direct physical loss' and 'physical damage' do not

18   extend to mere loss of use of a premises where there has been

19   no physical damage to such premises.  Those terms instead

20   require actual physical loss of or damage to the insured's

21   property."

22             The Second Circuit has reaffirmed this holding in five

23   subsequent decisions.  They are, at least this is what the

24   Court has found as of yesterday:  *BR Restaurant Corporation v.*

25   *Nationwide Mutual Insurance Company,* 2022 Westlaw 1052061, and

M4LPCHED

that was a summary order issued on April 8th of 2022; *SA Hospital Group LLC v. Hartford Fire Insurance Company*, 2022 Westlaw 815683; *Dear Mountain Inn, LLC v. Union Insurance Company*, 2022 Westlaw, 598976; *Kim-Chee, LLC v. Philadelphia Indemnity Insurance Company*, 2022 Westlaw 258569; and *Rye Ridge Corporation v. Cincinnati Insurance Company*, 2022 Westlaw 120782.  These were all issued in the first four months of this calendar year.

          Plaintiff seeks to distinguish this controlling precedent, and the many other concordant cases cited by defendants from this district and New York State courts, on the grounds that most of them did not deal with allegations that a policyholder's damage or loss was caused by the actual or even threatened presence of SARS-CoV-2 on insured property.  In other words, plaintiff asserts that its allegations in this case amount to more than mere loss of use of property because it has alleged that the Covid-19 virus physically altered the indoor air and tangible surfaces it attached to within covered property.

          Plaintiff further alleges that the virus causes property damage by rendering property unsafe and unfit for habitation and use by transforming both the shared air breathed by the property's occupants and the physical surfaces of the property itself, and that's paragraph 24 of the amended complaint.  I'm also quoting in this section from pages 11 and

M4LPCHED

1    19 of the plaintiff's opposition.

2              This Court is skeptical that the amended complaint

3    alleges as much as plaintiff claims in response to this motion.

4    Plaintiff's theory of physical property damage rests on the

5    cumulative infection hazard posed by respiratory aerosols,

6    fecal bio-aerosols and the accumulation of SARS-CoV-2 virions

7    on surfaces.  Yet, it is unclear to the Court how the airborne

8    presence of the Covid-19 virus damages property owned or

9    controlled by plaintiff or its customers, besides posing a risk

10   of settling on surfaces.

11             And separately, the Court sees reason to question

12   plaintiff's allegations regarding the damage caused by the

13   presence of the virus on surfaces.  For one, plaintiff

14   selectively quotes the CDC guidance upon which it relies for

15   this proposition, noting that the CDC has said that there is

16   little evidence to suggest that routine use of disinfectants

17   can prevent the transmission of coronavirus in community

18   settings, but neglecting to mention that the same CDC guidance

19   goes on to explain that routine cleaning, performed effectively

20   with soap or detergent at least once per day, can substantially

21   reduce virus levels on surfaces.

22             In addition, plaintiff hints that more specificity

23   about the identity of customers and the extent of property

24   damage will be disclosed during discovery, when appropriate and

25   protected under the parties' confidentiality agreement.

M4LPCHED

1    Plaintiff also represents that it has retained a virologist

2    expert, who at the appropriate stage of this litigation, will

3    substantiate and elaborate on SARS-CoV-2 and the physical

4    damage it causes to property.

5             But these promises to provide more information at a

6    later date do not convince this Court that the amended

7    complaint clearly alleges that SARS-CoV-2 has caused the sort

8    of physical damage to property necessary to trigger coverage

9    under the policy.

10            To more succinctly articulate the Court's concern,

11   plaintiff's allegations that the Covid-19 virus damages

12   property by rendering it unsafe for occupation and use without

13   extreme mitigation measures in place, sounds simply as an

14   artful attempt to plead around the binding rule that the terms

15   direct "physical loss" and "physical damage" do not extend to

16   mere loss of use of the premises.

17            Most helpful to the Court on this front is plaintiff's

18   allegation that SARS-CoV-2 variant compromised the physical

19   integrity of Chef's Warehouse's property, and that is at

20   paragraph 72 of the amended complaint.  Although plaintiff does

21   not provide any description as to how the virus might affect

22   the physical integrity of any covered property, this is

23   squarely the kind of allegation that makes out physical damage

24   or loss, as courts have interpreted the phrase.

25            With that said, the Second Circuit in *Kim-Chee, LLC,*

M4LPCHED

```
1
```
*v. Philadelphia Indemnity Insurance Company*, seemingly rejected

```
2
```
a version of the argument that the actual presence of the virus

```
3
```
poses a risk of physical harm.  In that case, the Second

```
4
```
Circuit affirmed the district court's conclusion that the

```
5
```
Covid-19 virus did not constitute physical loss of or damage to

```
6
```
the subject property because it could not "physically alter or

```
7
```
persistently contaminate property."

```
8
```
   This Court acknowledges the Second Circuit's statement

```
9
```
on this point, and that it very well may be dicta, but the

```
10
```
Court is not convinced that it is equipped, on this record, to

```
11
```
determine, as a matter of law, whether the coronavirus can

```
12
```
cause physical damage to the property on which it attaches.

```
13
```
   Defendant has cited several lower court decisions

```
14
```
suggesting that the presence of the coronavirus at plaintiff's

```
15
```
or its customer's properties cannot cause physical loss or

```
16
```
damage because the virus' presence can be eliminated by routine

```
17
```
cleaning and disinfecting.  At this time, the Court is not

```
18
```
willing to draw such a sweeping conclusion on what it perceives

```
19
```
to be a contested fact.

```
20
```
   In addition to its selective citation to CDC guidance,

```
21
```
plaintiff also points to the existence of a scientific study

```
22
```
suggesting that even extraordinary cleaning measures do not

```
23
```
completely remove coronavirus from surfaces.  If this

```
24
```
allegation were to be borne out, if plaintiff could corroborate

```
25
```
its claim that the presence of the coronavirus could compromise

M4LPCHED

1    a property's physical integrity, plaintiff very well may have

2    stated a valid claim for coverage.

3          As this discussion should demonstrate, precedent from

4    the Second Circuit very likely forecloses plaintiff's claim for

5    coverage.  This Court believes at this time there remains a

6    narrow path for plaintiff to claim that the actual presence of

7    the Covid-19 virus threatened the integrity of covered

8    property, which would constitute physical loss or damage to

9    trigger coverage under the policy.

10          However, this avenue for coverage does not save

11   plaintiff's claims from dismissal, as the policy contains a

12   contamination exclusion that directly bars coverage in this

13   case and that the Court will turn to next.

14          Defendant argues that plaintiff's claimed losses are

15   barred by the policy's contamination exclusion and plaintiff

16   disagrees, contending that the exclusion is narrow in scope and

17   does not apply to loss or damage due to actual contamination,

18   or is at least ambiguous on this point.

19          As recounted earlier, the contamination exclusion

20   applies to contamination and any costs due to contamination,

21   including the inability to use or occupy property, or any cost

22   of making property safe or suitable for use or occupancy.  The

23   policy defines contamination as any condition of property

24   resulting from a contaminant.  With "contaminant," in turn,

25   defined to include virus or any disease-causing or

M4LPCHED

1    illness-causing agent.

2            In opposing defendant's motion, plaintiff seeks to

3    draw a distinction between costs due to contamination, which

4    are specifically referenced in the exclusion, and losses or

5    damages, which are not.  And this is set forth at pages 21 and

6    22 of plaintiff's opposition.

7            And on plaintiff's reading, if defendants intended the

8    contamination exclusion to eliminate coverage for all loss or

9    damage due to contamination, the provision would not have

10   singled out cost while remaining silent as to other forms of

11   recovery.

12           This Court finds this reading to be untenable.  As

13   noted, the policy broadly defines the term "contamination" to

14   mean any condition of property that results from the

15   contaminant, including a virus.  The provision, thus,

16   unambiguously bars coverage for any condition of property

17   resulting from a virus and any cost due to such a condition.

18           Accepting plaintiff's interpretation of the provision

19   would effectively erase the first two words "contamination and"

20   from the exclusion, which is not an acceptable reading.  As one

21   of many cases at this point, I cite the parties to

22   *Rutgerswerke AG & Frendo S.P.A. v. Abex Corp.*, 2002 WL 1203836

23   (S.D.N.Y. 2002), which notes that under New York law, a court

24   must interpret a contract so as to give effect to all of its

25   clauses and to avoid an interpretation that leaves part of

M4LPCHED

1     contract meaningless.

2              Even accepting plaintiff's point that there was a

3     distinction between cost and loss or damage, the provision's

4     plain terms do not limit the exclusions reached to claim

5     seeking recovery of costs due to contamination.

6              Now, in arriving at this conclusion, this Court

7     declines to follow the decision of a sister court in this

8     district in *Four Equities, LLC, v. Factory Mutual Insurance*

9     *Company*.  That case is reported at 531 F. Supp. 3d 802, it was

10    issued in 2021, and found an identical contamination exclusion

11    to be ambiguous.  The Court in *Four Equities* located ambiguity

12    of the exclusion after crediting the policyholder's argument

13    that because the insurance policy at issue in that case

14    distinguished between "cost" and "loss" elsewhere, but did not

15    do so in the contamination exclusion, it cannot be said that

16    the exclusion unambiguously forecloses recovery on the

17    policyholder's losses due to contamination.  I am quoting from

18    that decision at page 808.

19             But at the same time, the court acknowledged that the

20    policyholder's reading of the exclusion as barring coverage

21    only for costs of contamination risked rendering certain

22    aspects of the exclusion meaningless, in particular, as this

23    Court just noted, the first two words of the exclusion.  Giving

24    effect to these words, means that the exclusion could

25    reasonably be read to encompass more than just any costs due to

M4LPCHED

1   contamination.  That is from the sister court's analysis.

2            And so let me be clear.  This Court agrees with the

3   latter half of the *Four Equities* court's analysis, and it

4   declines to manufacture ambiguity out of what is otherwise

5   clear language.  It is a basic principle of contract

6   interpretation that parties cannot create ambiguity from whole

7   cloth, where none exists, because provisions are not ambiguous

8   merely because the parties interpret them differently.

9            As one of many cases for that principle, I commend to

10  the parties the *Universal American Corporation v. National*

11  *Union Fire Insurance Company of Pittsburgh*, 16 N.Y.S.3d 21

12  (2015).

13           This Court, thus, finds that the ordinary meaning of

14  the contamination exclusion extends to plaintiff's claim in

15  this case, as it seeks coverage for harm resulting from a

16  condition of property resulting from a contaminant.  Further,

17  because the Court does not find the contamination exclusion to

18  be ambiguous, it declines to consider the extraneous Insurance

19  Services Office circular regarding virus exclusions to

20  elucidate the meaning under the policy's contamination

21  exclusion.

22           Plaintiff also seeks to evade the contamination

23  exclusion by arguing that the exclusion does not cover

24  concurrent causes of loss, which it claims is the case here

25  because in addition to the actual presence of the coronavirus,

M4LPCHED

1     its losses were caused by the government's shutdown orders and

2     the government's failure to contain the pandemic.  This

3     argument is contained at pages 24 and 25 of plaintiff's

4     opposition.

5            And plaintiff argues that certain exclusions in the

6     policy are prefaced with anti-concurrent cause language,

7     specifying that losses brought about by two or more

8     contributing causes are excluded from coverage.  Because the

9     contamination exclusion lacks a comparable preparatory clause,

10    plaintiff argues that the provision does not exclude concurrent

11    causes of loss, and, thus, the plaintiff's claim is not

12    captured by the contamination exclusion.

13           This Court rejects plaintiff's attempt to disaggregate

14    the Covid-19 virus from the governmental response to curb the

15    same.  Indeed, the emergency orders and the allegedly

16    inadequate government response, are inherently and inextricably

17    intertwined with the virus that plaintiff claims to have caused

18    its losses.  Plaintiff has not, in fact, alleged that its

19    losses were caused by multiple discrete factors because the

20    causes proffered by plaintiff all originate from the same

21    source, the Covid-19 virus.

22           On this issue, the Court joins the body of precedent

23    rejecting similar claims that the government's response to the

24    Covid-19 pandemic is a distinct cause of harm, wholly separate

25    from the pandemic itself.  As several examples of cases in

M4LPCHED

1   which this analysis is undertaking, the Court cites *WM Bang LLC*

2   *v. Travelers Casualty Insurance Company of America*, 2021 WL

3   4150844, a Southern District decision from September of 2021,

4   collecting a number of cases; *Broadway 104, LLC v. XL Insurance*

5   *America, Incorporated*, 2021 Westlaw 4150844, a Southern

6   District decision from September of 2021, collecting a number

7   of cases; *Broadway 104, LLC v. XL Insurance America,*

8   *Incorporated,* 545 F. Supp. 3d 93, a Southern District decision

9   from 2021; and *100 Orchard Street LCC v. Travelers Indemnity*

10  *Insurance Company of America*, 542 F. Supp. 3d 227, a Southern

11  District of New York decision from 2021.

12          In sum, this Court is doubtful that the amended

13  complaint adequately pleads direct physical loss or damage

14  necessary to trigger coverage under the policy.  Even if it

15  does, however, and to the extent that it does, the Court finds

16  that plaintiff's claim clearly fits within the contamination

17  exclusion and, as such, the defendant's motion to dismiss the

18  amended complaint is granted.

19          Plaintiff has not requested leave to amend its

20  pleadings for a second time.  Even if it had, the Court does

21  not view amendment to be appropriate, given the nature and

22  history of this case.  All that remains, and the Court will do

23  this later today, is to issue an order directing the clerk's

24  office to close this case.

25          With that, I do think thank the parties very much for

M4LPCHED

1   sitting patiently through a lengthy oral opinion.  I appreciate

2   the arguments in both rounds of motion practice in this case.

3   I thank you very much.  We are adjourned.

4              MS. HAGER:  Thank you, your Honor.

5              MR. ELLISON:  Thank you, your Honor.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25